961 A.2d 80

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ronald CLARK, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 11, 2008.

Decided Dec. 17, 2008.

208

Billy Horatio Nolas, Esq., Andrew L. Harris, Esq., Defender Association of Philadelphia, Philadelphia, Ronald Clark, for Ronald Clark.

Amy Zapp, Esq., PA Office of Attorney General, Hugh J. Burns, Jr., Esq., for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice GREENSPAN.

This is a collateral capital appeal from an order dismissing in part Appellant Ronald Clark's petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. The PCRA court found Appellant's guilt phase claims without merit.[1] For the reasons that follow, we affirm.

On October 7, 1993, Appellant shot and killed Aineis Sunn Life ("the victim") following an argument in a Philadelphia delicatessen. Eyewitnesses to the shooting testified that Appellant and the victim exchanged angry words while in line at the deli. Appellant left the deli, walked to a nearby playground, and retrieved from co-defendant Kevin Dwight a shotgun that was concealed inside an umbrella. Appellant immediately returned to the deli, walked directly to the victim,

---

1. The PCRA court granted Appellant's request for a new penalty hearing based on trial counsel's ineffectiveness in failing to present additional mitigation evidence. The Commonwealth did not appeal this order.

and shot him in the head, stating, "What you got to say now, m_____?"

Appellant was charged with murder, possession of an instrument of crime, and conspiracy. His first trial in July 1994 ended in a mistrial when the jury failed to return a verdict. A second jury trial took place in December 1994 before the Honorable Paul Ribner. Among the Commonwealth's key witnesses were three people who were at the scene of the shooting that night. Kevin Pettiway, a friend of the victim who accompanied him to the deli, observed the exchange between Appellant and the victim and identified Appellant as the shooter. Sherry Taggart, who was sweeping the deli parking lot, also identified Appellant as the shooter. Taggart observed Appellant enter the deli with an umbrella and watched through the glass door as Appellant shot the victim in the head. Nigel Bell, a friend of the victim, witnessed the exchange of the concealed shotgun from Dwight to Appellant at the playground. Bell then heard the shotgun blast and saw Appellant run out of the deli and down the street.

Appellant presented his two roommates as alibi witnesses, both of whom testified that Appellant was at home celebrating a job offer on the night of the murder. The jury found Appellant guilty of all charges and on December 6, 1994, returned a sentence of death.[2]

Following the appointment of new counsel, this Court affirmed Appellant's judgment of sentence on April 2, 1998. *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31 (1998). The United States Supreme Court denied Appellant's petition for *certiorari. Clark v. Pennsylvania*, 526 U.S. 1070, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999).

On May 17, 1999, Appellant filed a pro se PCRA petition. On November 24, 1999, newly appointed counsel (Appellant's third attorney in this case) filed an amended petition on Appellant's behalf, seeking reversal of his death sentence and

---

**2.** The jury found one aggravating circumstance, that Appellant had a significant history of felony convictions, and no mitigating circumstances. Co-defendant Dwight was convicted of third degree murder, criminal conspiracy, and possession of an instrument of crime.

his conviction. The petition set forth a number of claims of ineffective assistance of trial counsel, but did not assert ineffectiveness on the part of appellate counsel. On October 25, 2000, the PCRA court, the Honorable Carolyn Engel Temin, dismissed some of Appellant's claims without a hearing, but granted an evidentiary hearing on others. The evidentiary hearing took place over a period of seven days in June and July 2002, during which time Appellant presented a number of witnesses, including trial counsel.

At the conclusion of the hearing, and after the submission of post-hearing briefs, the PCRA court granted Appellant a new penalty hearing, but denied his request for a new trial. The order was briefly vacated pending negotiations, but was reinstated on September 5, 2003, after the negotiations failed. Judge Temin issued an opinion in support of the order on August 25, 2006.

Represented by new counsel, Appellant filed the instant appeal, challenging the denial of relief on his guilt-phase claims. He raises the following eight issues on appeal:

1. Was trial counsel ineffective for failing to investigate and present evidence to impeach the credibility of the three Commonwealth witnesses who purported to identify Mr. Clark; and was appellate counsel ineffective for failing to raise these meritorious issues on direct appeal?

2. Did the Commonwealth violate its obligations under *Brady v. Maryland* by failing to disclose evidence that could have been used to impeach the Commonwealth's key witness?

3. Did the trial court err in giving a flight instruction as to Mr. Clark; was trial counsel ineffective in failing to pursue a curative instruction; and was appellate counsel ineffective for failing to raise this meritorious issue on appeal?

4. Was trial counsel ineffective for failing to present adequate evidence to support Mr. Clark's alibi defense; and

was appellate counsel ineffective for failing to raise this meritorious issue on direct appeal?

5. Was trial counsel ineffective for failing to present the "Stop 'n Go" videotapes from the night of the shooting; and was appellate counsel ineffective for failing to raise this meritorious issue on direct appeal?

6. Did the trial court improperly instructed [sic] the jury on the meaning of reasonable doubt, and were trial and appellate counsel ineffective for failing to raise this issue?

7. Was trial counsel ineffective for failing to renew his motion to suppress upon learning of the police misconduct during the photo arrays; and was appellate counsel ineffective for failing to raise this meritorious issue on direct appeal?

8. Did the prosecutor exercise peremptory challenges in a racially discriminatory manner, and were trial and appellate counsel ineffective for failing to raise this issue?

Appellant's Brief at 2.[3]

Our standard of review in an appeal from the denial of PCRA relief is "whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Gwynn*, 596 Pa. 398, 943 A.2d 940, 944 (2008) (citing *Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 723 (2003)). The PCRA petitioner bears the burden of demonstrating that the issues he is pursuing have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). There is no requirement that the PCRA court hold a hearing on every issue a petitioner raises. *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 579 (2005). The rules mandate a hearing only on "genuine issues of material fact." Pa.R.Crim.P. 909(B).

**3.** Portions of Issue 1, as well as Issues 3, 4, 5, 6, and 8 involve claims on which the PCRA court did not formally grant an evidentiary hearing. Our review is not impeded by the PCRA court's treatment of the issues in this case and so we proceed to consider each claim that Appellant sets forth in his brief to this Court.

## I. Preservation and Presentation of Claims on Appeal

█ In his recitation of issues, Appellant casts all but one of his claims in terms of ineffective assistance of counsel.[4] However, in the body of his brief, he makes an ineffectiveness argument for all eight claims. Our longstanding test for ineffective assistance of counsel derives from the standard set by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 976 (1987) (adopting the federal standard in Pennsylvania). Under *Pierce*, a petitioner must prove that: (1) the underlying legal claim is of arguable merit; (2) counsel had no reasonable strategic basis for proceeding as he did; and (3) there is a reasonable likelihood that, but for the challenged act of counsel, the outcome of the proceedings would have been different. *Id.* at 975. *See also Commonwealth v. Dennis*, 950 A.2d 945, 954 (Pa.2008). The failure to satisfy any one of the three prongs is fatal to a petitioner's claim. *Commonwealth v. Williams*, 594 Pa. 366, 936 A.2d 12, 19–20 (2007).

█ In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002), this Court held that challenges to counsel's effectiveness should be deferred until collateral review. However, *Grant* was filed after Appellant's direct appeal, making the pre-*Grant* rule of *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), applicable here. *Hubbard* requires a petitioner to raise challenges to the effectiveness of counsel at the first stage of litigation in which the petitioner was represented by counsel other than the one whose effectiveness was to be challenged. *Id.* at 695 n. 6. Thus, in cases like this one, in which ineffectiveness claims should have been, but were not, raised at the first possible opportunity, a petitioner is required to "layer" his claims. *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, 1021–22 (2003). To layer a claim properly, a petitioner must plead and prove each element of the ineffectiveness test with respect to every counsel whose representa-

4. In his Statement of Questions Presented, Appellant characterizes Issue 2 as one of prosecutorial misconduct.

tion he challenges. *Id.* The method of compliance with the layering rule is clear:

> [In] order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must **plead, present,** and **prove** the ineffectiveness of [appellate counsel], which as we have seen, necessarily reaches back to the actions of [trial counsel]. To preserve (plead and present) a claim that [appellate counsel] was ineffective ... the petitioner must: (1) **plead,** in his PCRA petition, that [appellate counsel] was ineffective for failing to allege that [trial counsel] was ineffective ... and (2) **present** argument on, i.e., develop, each prong of the *Pierce* test as to [appellate counsel's] representation, in his briefs or other court memoranda. Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim.

*Id.* at 1022 (emphasis in original) (citations omitted).

Recognizing that this Court's prior decisions failed to achieve consensus on the proper procedure for layering ineffectiveness claims, we concluded in *McGill* that it would be unduly harsh to enforce the layering rule strictly in cases where PCRA disposition or appeal therefrom was pending. Thus, we held that a remand to the PCRA court may be appropriate in order to allow an amendment in cases "pending in the appellate courts where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review." *Id.* at 1024. We have been clear, however, that a remand is not warranted in all cases in which the *McGill* presentation requirements are lacking. Where a PCRA appellant has failed to satisfy the *Pierce* test with respect to *trial counsel's* stewardship, there is no basis for remanding the matter to afford the appellant the opportunity to correct his pleadings in connection with *appellate counsel's* representation. *See Dennis, supra* at 956 (*McGill* "does not save [an a]ppellant from the obligation properly to layer his claims before this Court,

or from a failure to plead and prove the ineffectiveness of *trial counsel* sufficiently under Pierce"). *See also Commonwealth v. Gibson,* 951 A.2d 1110, 1121 (Pa.2008) (assessment of underlying claims regarding trial counsel's conduct "employed solely as a means of determining the viability of extant derivative claims").

In the instant matter, Appellant failed to layer his ineffectiveness claims in the PCRA court, although he makes an effort to do so in his brief to this Court. Nonetheless, as our discussion below establishes, Appellant has not adequately pled and proven the ineffectiveness of trial counsel under the *Pierce* standard. As a result, his failure to layer the claims below is moot and Appellant is not entitled to relief in any event. *See Dennis, supra; Gibson, supra.*

## II. Discussion

For clarity's sake, our discussion reflects a minor revision to the order of Appellant's claims. We begin our analysis by addressing a part of claim 1, followed by claims 2 and 7, all of which involve the same witness, Sherry Taggart.

### A. Commonwealth Witness Sherry Taggart

Sherry Taggart was sweeping the deli parking lot on the night of the murder. She testified at trial that she saw Appellant shoot the victim. At the PCRA hearing, defense counsel called Taggart to testify about a letter she purportedly wrote to Appellant's mother after Appellant's first trial and before his second trial. In the letter, Taggart recanted her identification, saying that she did not know whether Appellant committed the murder or not. The letter went on to state that police encouraged Taggart to choose Appellant's photo from an array and that she did as directed. The letter blamed Taggart's conduct on her drug addiction.[5]

█ PCRA counsel asserted that trial counsel was ineffective in failing to use the letter to impeach Taggart at the

5. After the letter was written, Taggart testified at Appellant's second trial and positively identified him as the shooter.

second trial.[6]  At the PCRA hearing, counsel called Taggart as a witness and asked her about the letter's contents and purpose.  Taggart testified that although it was her signature on the letter, she had no memory of writing it.  Taggart further testified that "somebody" must have contacted her in order for her to have written the letter.  Notes of Testimony ("N.T.") 6/21/02 at 187;  209–10.  Taggart explained that at the time the letter was written, she had no idea who Appellant's mother was and did not know where she lived.

Trial counsel also testified at the PCRA hearing.  He explained that he knew about the letter prior to the second trial and made a strategic decision not to use it against Taggart on cross-examination.  Counsel explained that his theory of the case prompted his decision on this issue.  At the first trial, counsel had advanced a theory that the three eyewitnesses, none of whom knew Appellant, had misidentified him.  The first trial ended in a mistrial, with the jury unable to reach a verdict.  Counsel was concerned that the letter, which indicated that Taggart knew Appellant and his family, would undermine his previously successful strategy.  Moreover, counsel testified, he was concerned that Taggart might tell the jury that she was "threatened" or "forced" to write the letter.  N.T. 6/25/02 at 98.  Counsel feared his cross-examination of Taggart on this issue would "blow up" in his face.  *Id.* at 87.

The PCRA court concluded that Taggart did not willingly and independently write the letter.  The court further con-

6.  On direct appeal, appellate counsel asserted that trial counsel should have called Appellant's mother and a defense investigator as witnesses to introduce the letter and thereby challenge Taggart's credibility.  This Court rejected the ineffectiveness claim, observing that the letter was not part of the certified record on appeal and there was no evidence that counsel was aware of the letter.  This Court further noted the inherent unreliability of recantation evidence and the reasonableness of an attorney's strategic decision to forego the use of such evidence.  *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 42 (1998) ("The introduction of untrustworthy evidence would more likely hinder appellant's cause then [sic] aid it.").  The testimony at the evidentiary hearing confirms that the highly unreliable nature of the letter and its questionable source were the very reasons it was not used at Appellant's trial.

cluded that counsel exercised a reasonable strategy in declining to use the letter at the second trial. Finally, the court determined that even if the issue were meritorious and there was no reasonable basis for counsel to proceed the way he did, Appellant had not established that but for counsel's alleged error, the verdict would have been different.

The law is clear that we are bound by the credibility determinations of the PCRA court, where such findings have support in the record. *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 93 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999) ("Where . . . there is record support for a PCRA court's credibility determinations, we, as a reviewing court, are bound by those determinations") (citing *Commonwealth v. Beasley*, 544 Pa. 554, 678 A.2d 773, 778 (1996)). The PCRA court's finding is amply supported here. Taggart could not recall ever writing the letter and testified that she did not even know Appellant's family at the time. She testified that "somebody" would have prompted the letter, thereby admitting that she did not write the letter on her own. The PCRA court considered Taggart's testimony, observed her demeanor, and concluded that Taggart did not willingly or independently write the letter. Further, the PCRA court credited counsel's explanation for declining to use the letter at the second trial, recognizing it as sound strategy.

We conclude that the PCRA court's findings have support in the record and we will not disturb them. The court properly rejected Appellant's claim that trial counsel was ineffective for failing to impeach Taggart with the letter she allegedly wrote.

Appellant's claims with respect to the Taggart letter are not limited to questioning counsel's use of the letter as a recantation. Appellant further claims that the fact that Taggart mentioned her drug addiction in the letter provided an additional basis for impeachment, to wit, that Taggart was under the influence of narcotics on the night of the murder and so was not capable of identifying Appellant. In rejecting this claim, the PCRA court reasoned that even though Taggart testified at the PCRA hearing that she did not know if she was "coming or going" at the time of the murder, she exhibited

some measure of awareness and control. PCRA Ct. Op. at 14. The PCRA court noted that Taggart managed to ensure that she was present for her job at the deli and she had the presence of mind to be concerned about her daughter's welfare when the shooting occurred. In addition, the PCRA court relied on the hearing testimony of trial counsel, as well as the prosecuting attorney, both of whom testified that Taggart did not appear to be under the influence of drugs on any of the occasions they interacted with her.

We find no error in the PCRA court's assessment. We observe first that the letter did not assert that Taggart was under the influence of narcotics on the night of the murder. Further, upon consideration of the record as whole, and in light of the deference to be accorded the PCRA court, we find no basis to afford relief on this issue. A thorough reading of the record leads us to conclude that Taggart's evidentiary hearing testimony simply did not have the effect Appellant desired. While Taggart claimed at the hearing that she was uncertain about events surrounding the murder, her testimony was equivocal and cannot fairly be described as the "recantation" Appellant seeks to insert here. Similarly, the letter was not a reliable basis for impeachment with regard to Taggart's alleged drug addiction. Taggart's testimony about the letter, and counsel's explanation for declining to use it, lend more than sufficient support to the PCRA court's resolution of this issue. Appellant's claim fails.

Appellant's focus on Taggart's drug addiction leads to his next claim concerning this witness. Appellant alleges that the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose evidence that could have been used to impeach Taggart, and that trial and appellate counsel were ineffective for failing to raise this issue at trial and on appeal.[7] Appellant's *Brady* claim has two parts. First, he asserts that the Commonwealth

---

7. It is this claim that Appellant raises both as prosecutorial misconduct and ineffective assistance of trial and appellate counsel. As we explain, there is no merit to the claim in any event and so Appellant is not entitled to relief, regardless of the manner in which he characterizes the claim.

failed to disclose that Taggart was addicted to drugs and alcohol, as well as under the influence of narcotics on the night of the shooting. Second, he claims that the Commonwealth concealed an agreement to drop criminal charges against Taggart in exchange for her testimony at trial. The PCRA court dismissed both claims after the evidentiary hearing, concluding that Appellant proffered no evidence to establish either one.

To establish a violation under *Brady,* an appellant must demonstrate: "1) suppression by the prosecution 2) of evidence, whether exculpatory or impeaching, favorable to the [appellant], 3) to the prejudice of the [appellant]." *Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294, 305 (2002) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). The evidence purportedly suppressed must have been material to guilt. *Commonwealth v. Gibson,* 951 A.2d 1110, 1126 (Pa.2008) (citations omitted). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136, 1141 (2001) (citations omitted).

With respect to the evidence of drug addiction and Taggart's condition on the night of the murder, Appellant relies primarily on the Taggart letter and Taggart's testimony at the PCRA hearing. At the hearing, Taggart indeed testified that she was under the influence of drugs and alcohol, as well as sleep-deprived, on the night of the shooting. She furthered testified that she told police at the time that she could not be sure of the shooter's identity. Appellant now asserts that not only is Taggart's version of events true, but the prosecutor was in possession of all of this information at time of trial and withheld it from the defense in violation of *Brady.*

The transcript of the PCRA hearing belies Appellant's claims. Appellant offered no credited evidence that the prosecution was aware of the condition Taggart claimed (at the PCRA hearing) to have been in on the night of the crime.

Nor did Appellant present any credited evidence that the Commonwealth knew Taggart was uncertain about her identification. The only evidence Appellant offered was that of Taggart, whose testimony the PCRA court explicitly declined to credit.[8] The PCRA court not only discounted Taggart's testimony in this regard, it also credited the testimony of trial counsel and the prosecutor. Taggart testified at the PCRA hearing that her drug addiction would have been obvious to anyone who saw her. However, trial counsel testified that he did not observe anything unusual about Taggart's demeanor to suggest drug addiction. The prosecutor gave the same testimony when asked about her own interaction with Taggart. In light of the record and our limited standard of review, we conclude that no relief is warranted on this issue.

We reach the same conclusion on Appellant's other *Brady* claim. Appellant argues that the Commonwealth concealed from the defense the fact that it made a deal with Taggart to induce her to testify. In support of this claim, Appellant proffered evidence that a five-year-old retail theft charge that Taggart faced was dismissed on August 15, 1994, shortly after Taggart testified at Appellant's first trial, but before she testified at the second trial. Appellant argues that the dismissal of this charge constitutes proof of an agreement between Taggart and the Commonwealth. The PCRA court rejected this claim for lack of any evidence.

■■■■ We agree with the PCRA court that the record simply does not support this claim. Contrary to Appellant's argument, Taggart herself testified at the PCRA hearing that she did *not* have an agreement with the Commonwealth. The prosecutor likewise testified that she struck no deal with Taggart, and further offered that she was not even aware of Taggart's unrelated retail theft charge. Our review of the record leads us to conclude that the PCRA court's ruling on

---

8. Based on Taggart's evidentiary hearing testimony, Appellant argues that the Commonwealth withheld the fact that the police confiscated a crack pipe from Taggart when she was picked up for questioning. However, Appellant did not present any evidence supporting this assertion, other than the testimony of Taggart, which the PCRA found unreliable.

this issue was proper. The only evidence of record was that there was no deal between the Commonwealth and Taggart. Appellant's *Brady* claim is wholly without merit.

The final claim Appellant asserts in connection with Taggart involves alleged misconduct by police in the use of a photo array. Appellant claims that once trial counsel read the letter Taggart allegedly wrote to Appellant's mother, counsel should have moved to renew his motion to suppress Taggart's identification. This is true, Appellant argues, because the letter asserts that police urged Taggart to identify Appellant from the photo array.

The PCRA court rejected this claim. Following extensive testimony by Taggart and trial counsel on this issue, the court concluded with certainty that the Taggart letter, however it came to be, was neither willfully nor independently written. We find no error in the PCRA court's findings. Taggart's own testimony called into question the reliability of the letter. Moreover, Taggart specifically testified that she remembered no coaching by police in connection with the photo array. Finally, trial counsel testified about his concern that Taggart would testify that she knew Appellant's family and she was forced to write the letter. All of this evidence supports the PCRA court's (and trial counsel's) treatment of the letter and its contents. We conclude there was no error in the PCRA court's credibility-based findings and no basis for finding ineffectiveness. Appellant is due no relief.

## B. Commonwealth Witness Nigel Bell

The next claim we address is Appellant's contention that counsel was ineffective for failing to impeach Commonwealth witness Nigel Bell. At trial, Mr. Bell testified that he saw Appellant exit the deli, obtain the concealed shotgun from Dwight, and return to the deli moments before the shooting. Appellant claims that trial counsel should have impeached Bell's testimony by calling Bell's girlfriend, Nicole Shaffer, to the stand. Appellant insists that Shaffer's statement to police shortly after the shooting conflicts with Bell's statement. The PCRA court dismissed this issue without a hearing, finding

that Appellant failed to establish Shaffer's willingness to testify. The PCRA court further concluded that Shaffer's statement did not conflict with Bell's testimony.

Where a defendant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well an adequate assertion that the substance of the purported testimony would make a difference in the case. Generally, we require a defendant to demonstrate that:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 599 (2007). *See also Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 746 (2004) (citing *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 630 (2001)). Appellant argues that the PCRA court erred in dismissing his claim simply because he did not attach an affidavit to his petition to establish Shaffer's willingness to cooperate. Appellant insists that trial counsel should have pursued Shaffer as a witness regardless of her willingness to testify, as she could have been impeached with her statement in the event she was uncooperative on the stand. Appellant argues that the PCRA does not require an affidavit and that such a document was unnecessary here.[9]

Regardless of whether the attachments to Appellant's PCRA petition sufficed to establish Shaffer's availability as a witness, his claim nonetheless fails because its underlying premise is faulty. Even if we were to assume that the substance of Shaffer's police statement would have reached the jury, either by way of her direct testimony or via impeach-

9. The PCRA provides that "where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." 42 Pa.C.S. § 9545(d).

ment, Appellant has not established that it would have affected the verdict. Shaffer's statement simply does not contradict Bell's testimony. Appellant focuses on the fact that Shaffer said she was with Bell on the night in question, and yet she did not state that she saw Dwight give Appellant the shotgun/umbrella. Of course, Shaffer's failure to state that she observed something does not mean that Bell's observations did not occur. As the PCRA court observed, "Shaffer's testimony that she did not see something [that Bell saw] did not contradict Bell's testimony." PCRA Ct. Op. at 11. Bell's identification of Appellant was corroborated by two independent eyewitnesses.

## C. Commonwealth Witness Kevin Pettiway

Appellant next asserts that counsel was ineffective for failing to impeach Commonwealth witness Kevin Pettiway, who was with the victim at the deli. The PCRA court dismissed this issue without a hearing after determining that Appellant's argument had no merit.

At trial, Pettiway positively identified Appellant as the shooter, corroborating the identifications of two other eyewitnesses. Appellant now claims that trial counsel should have cross-examined Pettiway with a prior statement Pettiway made to police in which he admitted that he was not paying attention at all times on the night of the murder. Appellant also claims that counsel should have cross-examined Pettiway about his testimony that he and the victim did not drink alcohol on the night of the murder. The medical examiner testified that the victim had alcohol in his system on the night he died.

The record is clear that trial counsel extensively cross-examined Pettiway at trial and continued to challenge Pettiway's reliability as a witness in his closing argument. As the PCRA court noted, the jury found Mr. Pettiway to be a credible witness even after trial counsel cross-examined him regarding alleged inconsistencies. Because trial counsel took the opportunity to impeach Pettiway on the very points Appel-

lant raises, no relief is due. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1224 (2006) (no ineffectiveness where counsel in fact made the same objections the appellant claims were proper).

### D. The Flight Instruction

Next we address Appellant's claim that counsel was ineffective for failing to object to an erroneous flight instruction. The trial court instructed the jury as follows:

> Generally speaking, when a crime has been committed and a person thinks that he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove that the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide or [sic] some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances in this case and especially upon motives which may have prompted the flight or concealment.

N.T. 12/2/94 at 48.

The PCRA court concluded that the flight instruction was proper because it was supported by evidence at trial. Further, reasoned the PCRA court, there was no prejudice in giving the instruction in light of what it considered to be overwhelming evidence of guilt.

▇▇▇ A jury instruction is proper if supported by the evidence of record. *Commonwealth v. Washington*, 547 Pa. 563, 692 A.2d 1024, 1028 (1997). This Court has held that "[w]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred." *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1035 (1996) (quoting *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782, 789 (1964)).

Appellant argues that there was no evidentiary support for the suggestion that he fled or concealed himself from authorities. He insists that Pennsylvania law "invariably require[s] evidence that the accused had engaged in some additional conduct demonstrating an intent to evade the police or conceal identity." Appellant's Brief at 46. Appellant cites no authority in support of this argument. Instead, he draws our attention to several cases wherein additional conduct of evasion was present to support a flight charge. *See, e.g., Commonwealth v. Lester,* 554 Pa. 644, 722 A.2d 997 (1998); *Rios, supra.*

Although the evidence in this case certainly establishes that Appellant "ran" from the deli after shooting the victim, we need not determine whether or to what extent a flight instruction must be supported by evidence other than an accused's departure from the scene of the crime. The PCRA court properly concluded that even if the instruction was improper in this particular case, Appellant in no manner established prejudice. We agree; Appellant was identified as the shooter by three independent eyewitnesses. The trial court's flight instruction could not have led the jury to convict Appellant "when it would not otherwise have done so." *Paddy,* 800 A.2d at 323 (finding no ineffectiveness for failing to object to improper flight instruction in light of strong evidence of guilt). Appellant has not established that the flight instruction, even if erroneous, contributed to the verdict.

Appellant further argues that the trial court should have instructed the jurors that they could consider evidence of Appellant's flight only if they disbelieved Appellant's alibi evidence. Appellant offers no authority for his argument that in an alibi case, the trial court should so instruct the jury when charging on flight.[10]

In any event, the record reflects that the trial court provided the jury with the very information that Appellant now claims was omitted in error. Prior to the flight instruction,

10. Appellant relies solely on *Commonwealth v. Jones,* 250 Pa.Super. 471, 378 A.2d 1245 (1977) to support his claim that such an instruction is required. But *Jones,* which is not binding on this Court, sets forth no such requirement.

the court told the jurors that "[o]bviously, a defendant cannot be guilty unless he was at the scene of the crime." N.T. 12/2/94 at 44. The court then recited the alibi instruction. Appellant's claim has no merit, and so trial counsel cannot be deemed ineffective for failing to act. *Commonwealth v. Jones,* 590 Pa. 202, 912 A.2d 268, 278 (2006) (holding counsel cannot be ineffective for failing to raise a meritless claim).

### E. Evidence in Support of Alibi

▮ Appellant's next claim is that counsel was ineffective for failing to offer evidence to support his alibi defense. At trial, Appellant's two roommates testified that he was with them on the night of the shooting, celebrating a job offer he had received that day from the Rittenhouse Hotel in Philadelphia. Trial counsel and the Commonwealth stipulated to the fact that Appellant had applied for a job at the hotel the day before the murder and that he began working at the hotel four days after the murder. Appellant argues now that trial counsel should have called hotel employee Jeffrey Berger to testify that Appellant was offered the job on the date of the murder. The PCRA court dismissed this claim without a hearing because it concluded that Berger's testimony would not have affected the verdict.[11]

There was no error on the part of the PCRA court in dismissing Appellant's claim. The inference Appellant seeks to establish could have been drawn from the stipulation that was entered at trial. Further, what Appellant was allegedly celebrating on the night of the shooting was ancillary to his alibi defense. Front and center in Appellant's alibi defense was the testimony of his two roommates that they were with him at home on the night of the shooting. Appellant does not explain how proof that he had been offered a job on that date would have changed the verdict; thus, he failed to establish prejudice. Appellant cannot establish ineffectiveness and so is

11. Appellant provided the PCRA court with an affidavit in which Mr. Berger indicated that he would be able to testify that it was the Hotel's usual course of business to offer a job on the same day that the applicant's references were checked.

not entitled to relief. *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1092–93 (1993) (holding lack of prejudice is fatal to ineffectiveness claims).

### F. Surveillance Videotape

Appellant next argues that trial counsel was ineffective for failing to secure and present surveillance videotapes from the deli on the night of the murder. Although he does not frame it in this way, Appellant's claim appears to involve two separate considerations: 1) the videotape trial counsel saw, but did not use; and 2) additional videotapes that Appellant asserts counsel failed to secure. The PCRA court did not grant a hearing on this issue, concluding that the PCRA petition was inadequate in pleading and in presentation.

Upon review of the record, we conclude that Appellant's assertions are unsubstantiated and merely speculative; he has not properly pled and presented his claim. With respect to the failure to use the videotape that Appellant concedes trial counsel viewed, Appellant did not adequately plead that the tape had any value to the defense. With respect to the failure to secure alleged additional tapes, Appellant did not adequately plead that such tapes even existed, let alone that they contained evidence favorable to his case.[12]

Moreover, Appellant's argument is internally inconsistent. He alleges, with regard to tapes that he claims exist, that the only "reasonable inference" to be made from the absence of these alleged tapes is that they prove he was not at the deli on the night of the murder. Appellant's Brief at 55. He argues: "Appellant is either on the videotapes, or he is not on the videotapes." Appellant's Brief at 56. Of course, this logic is contradicted by the fact that neither trial counsel nor the Commonwealth offered into evidence the videotape that Appellant *concedes* trial counsel reviewed prior to trial. Indeed, Appellant fails completely to discuss the videotape that trial

12. Both Appellant and the Commonwealth refer in their briefs to conversations and documents not of record. We will not consider these references and instead focus on the adequacy of Appellant's amended petition in making out this claim.

counsel saw and offers no explanation as to how or why counsel declined to use it at trial. Instead, Appellant states summarily and without foundation that other videotapes must exist and, further, that they must include relevant information.

We agree with the PCRA court that Appellant's assertions are simply inadequate to establish the existence of any videotape that was relevant to or helpful in his case. Appellant's argument is premised on the fact that in one summary of a police report, the word "videotapes" is used. According to Appellant, the use of the plural form of the word establishes that multiple tapes existed. The PCRA court concluded that this assertion was insufficient to warrant a hearing on the issue. We agree. Appellant offered no additional evidence to support his claim that there was more than one tape. To credit Appellant's assertion would convert the PCRA hearing into a fishing expedition with little or no real evidence in support of the claim. Appellant's petition simply failed to raise an issue of material fact.

An evidentiary hearing is not mandatory for all claims raised in a PCRA petition and Appellant may not avoid the requirement of setting forth evidence sufficient to establish an issue of material fact. *Collins*, 888 A.2d at 579. *See also* Pa.R.Crim.P. 909(B) (providing that the PCRA court need only grant a hearing on those issues for which a petitioner raises an issue of material fact). "[T]he dismissal of claims is appropriate where the pleadings are insufficient to state a claim for post-conviction relief." *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 526 (2001). Because Appellant failed to raise a genuine issue of material fact with respect to the videotape, he was not entitled to a hearing on this issue and the PCRA committed no error in dismissing the claim.

### G. *Instruction on Reasonable Doubt*

Appellant next claims that counsel was ineffective for failing to object to the court's instruction on reasonable doubt. Appellant argues that the instruction violated due process because it "suggested a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." Appel-

lant's Brief at 58 (quoting *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)).[13] The trial court defined reasonable doubt as follows:

> Now, what do we mean by the term, "reasonable doubt"? A reasonable doubt is a doubt that would restrain a reasonably careful and sensible person from acting upon a matter of importance in his or her own affairs.

N.T. 12/2/94 at 31. Appellant takes issue with the court's use of the phrase "restrain . . . from acting," and argues that this language imposes a lesser burden on the Commonwealth than is required by law. According to Appellant, under the proper standard, "a juror should find reasonable doubt if there is enough doubt to cause her to 'hesitate before acting' upon a matter of importance." Appellant's Brief at 59.

In *Commonwealth v. Rios,* 591 Pa. 583, 920 A.2d 790 (2007), this Court addressed an identical claim regarding the use of "restrain" versus "hesitate." We noted our previous rejection of the claim and reiterated our clear position on the issue:

> This hyper-technical semantical claim is rejected on a plethora of bases. First, although we have historically considered the language contained in these standard instructions to be an aid in our review, we have not placed our imprimatur upon them. Second, even if we had adopted this specific instruction, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instruction, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. In this matter the distinction between "hesitate" and "restrain before acting" is *de minimis* and clearly such a subtle variation in phrasing would not be an abuse of the trial court's discretion. Finally, this court has actually approved of a reasonable doubt instruction which tells the jury that it is "the kind of

---

13. The PCRA court apparently considered this claim a penalty phase issue and declined to address it on the merits due to its grant of a new penalty hearing. PCRA Ct. Op. at 23. We agree with Appellant that this claim is relevant to the guilt phase of his trial and so we address it.

doubt that would restrain a reasonable man (or woman) from acting ...."

*Id.* at 806 (quoting *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 899–900 (1999)) (citations omitted). In support of his argument, Appellant admittedly relies on a non-precedential opinion from the Third Circuit that "suggests" the result he seeks here. Appellant's Brief at 59 (citing *Brown v. Folino*, 179 Fed.Appx. 845 (C.A.3.2006)). Appellant makes no reference to the controlling cases excerpted above. Appellant's claim clearly is without merit, and counsel cannot be deemed ineffective for failing to pursue it.

*H. Batson Claim*

In his final claim, Appellant alleges that trial counsel should have objected to the prosecutor's use of peremptory challenges in a racially discriminatory manner, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The PCRA court dismissed this issue as previously litigated on direct appeal.

At trial, counsel for co-defendant Dwight twice objected to the prosecutor's rejection of African American jurors. Appellant did not join in these objections, but on direct appeal claimed that trial counsel was ineffective for not objecting at trial. This Court considered the claim and noted that "the trial court who observed the voir dire process found that the prosecutor had not exhibited a pattern of race or gender discrimination." *Clark*, 710 A.2d at 40–42. We upheld the trial court's findings, concluding: "As the record does not support a prima facie case of discrimination, trial counsel cannot be found ineffective for failing to pursue the *Batson* challenge." *Id.* at 41–42.

Appellant attempts to avoid the previously-litigated bar by asserting that his present claim relies on facts not previously raised on direct appeal. Appellant's Brief at 72. Specifically, Appellant points to proffered evidence of a "culture of discrimination in jury selection on the part of the Philadelphia District Attorney[']s office," including reference

to the "McMahon Tape" and notes from the "Sagel Lecture." *Id.* at 66–67.

We have repeatedly rejected similar claims that rely on this same evidence. We have "consistently held that the McMahon videotape not only is insufficient to establish that the Philadelphia District Attorney's Office had a policy of racial discrimination in jury selection, but also does not constitute evidence in support of discrimination in individual cases where the Commonwealth was represented by prosecutors other than McMahon." *Commonwealth v. Marshall,* 596 Pa. 587, 947 A.2d 714, 722 (2008). *See also Commonwealth v. Washington,* 592 Pa. 698, 927 A.2d 586, 610 (2007) (noting several cases in which this court has rejected similar arguments and holding that the "mere existence of the McMahon tape does not demonstrate prejudice in a particular case"). With respect to the notes from the Sagel Lecture, this Court has held that they are "simply another, albeit more specific, source for the same general allegations" of racial discrimination in the Philadelphia District Attorney's Office, and "[l]ike the McMahon videotape, the notes do not establish a policy or general practice of racial discrimination in jury selection in the District Attorney's Office." *Marshall, supra* at 722. This Court made it clear in *Marshall* that the evidence offered in a *Batson* claim must be grounded in the particular facts of the appellant's case. *Id.*

In this case, Appellant offered no evidence specifically linking examples of racial discrimination to *his* jury selection. Appellant's claim is clearly without merit, and trial counsel cannot be faulted for failing to raise it. The PCRA court did not err in dismissing this claim.

## III. Conclusion

For the foregoing reasons, we affirm the order of the PCRA court.

Chief Justice CASTILLE, and Justice SAYLOR, EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.