J-S82025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM GREENE | : | |
| | : | |
| Appellant | : | No. 2770 EDA 2017 |

Appeal from the Judgment of Sentence April 24, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006935-2016

BEFORE: LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.: **FILED MARCH 05, 2019**

Appellant, William Greene, appeals from the judgment of sentence following his jury trial convictions for second-degree murder, robbery, possessing an instrument of crime, carrying a firearm without a license, and carrying a firearm in public in Philadelphia.[1] We affirm.

The trial court summarized the facts of this case as follows:

On August 13, 2014, Alexis Guevara and his friend Marcell Lawrence attended a concert hosted by Power 99 at the Dell Music Center in the Strawberry Mansion section of the city [of Philadelphia]. The concert started at 5:00 p.m. and was due to conclude at 9:00 p.m. Guevara and Lawrence arrived late and were denied entrance. They decided to hang out in the parking lot.

Later, [Appellant] and Eric Jamison arrived at the same concert and were denied admission because, they too, arrived late. [Appellant] and Jamison also decided to hang out in the same

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701, 907, 6106, and 6108, respectively.

---

\* Retired Senior Judge assigned to the Superior Court.

parking lot. While Guevara and Lawrence were talking to girls in the parking lot, Lawrence noticed that Jamison was sitting on the trunk of his car, and called out, "get off my car." In response, Jamison walked directly toward Lawrence and confronted him saying, "Why? What's up," in a confrontational tone. During the confrontation between Jamison and Lawrence, [Appellant] came around from the other side of the car and produced a gun. With his gun drawn, [Appellant] said "Hey, Gold Watch. Run your pockets," indicating a robbery was occurring. Jamison then attempted to reach into Lawrence's pockets.

A struggle between Guevara and [Appellant] followed. [Appellant] backed away and shot Guevara, striking him in the leg causing him to fall. [Appellant] then shot Guevara again, this time hitting him on the left side of his lower back. Afterward, both [Appellant] and Jamison ran to the car they arrived in and sped away. Lawrence then came to the aid of the now fatally injured [] Guevara.

After the shooting, Lawrence ran to the entrance gate of the Dell Music Center seeking help for his friend. However, the security guards closed the gate to keep [any potential] shooter from entering the venue during the concert. Meanwhile, Stephen Foster witnessed the entire incident as he sat facing the main gate. He had arrived at the Dell Music Center to pick up his daughter who was inside attending the concert. Later, police officers arrived and transported Guevara to Temple University Hospital, where he died the next morning.

Both [Appellant] and Jamison were later identified as the two men involved in the Dell Music Center parking lot shooting. In addition, Lawrence, Jamison and Foster all identified [Appellant], in court during trial, as the person who shot the decedent.

While in custody, Jamison received a letter from [Appellant] encouraging Jamison to remain positive despite murder charges lodged against him. The unsigned letter was consistent with [Appellant's] unique manner of speaking, emotional inflection, and expressions that only he used while speaking to Jamison.

Trial Court Opinion, 4/25/2018, at 2-3 (record citations omitted).

The case proceeded as follows:

On April 24, 2017, a jury convicted [Appellant of the aforementioned charges]. [Appellant] was sentenced to life imprisonment without the possibility of parole on the second[-]degree murder charge. On May 5, 2017, trial counsel, Gary S. Silver, Esquire, filed a post sentence motion and a motion to withdraw. On August 29, 2017, [the trial] court issued an order denying [Appellant's] post sentence motion, and [Appellant] filed a notice of appeal. On August 29, 2017, [the trial] court ordered [Appellant] to file a [Pa.R.A.P.] 1925(b) statement of [errors] complained of on appeal. Subsequently, on September 15, 2017, [the trial] court granted [Attorney] Silver's motion to withdraw. John M. Belli, Esquire, entered his appearance as court appointed appellate counsel on October 20, 2017. On November 27, 2017, [Attorney] Belli filed a statement of [errors] complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 28, 2017, Laurence A. Narcissi, Esquire, was retained as appellate counsel, and [he] filed a motion for an extension of time within which to file a Rule 1925(b) statement. On December 12, 2017, [the trial] court granted said motion. On December 22, 2017, counsel filed a second motion for an extension of time [which the trial court granted]. [Appellant] filed a [timely] Rule 1925(b) statement on January 18, 2018. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 25, 2018.]

**Id.** at 1-2.

On appeal, Appellant presents the following issues for our review:

1. Did the trial court err in the admission of a *de facto* confession alleged to have been authored by [A]ppellant, when the prejudicial effect of such far outweighed any probative value?

2. Did the trial court err in the admission [of the *de facto* confession] by overruling an objection to the admission of "prior kites?"[2]

3. Did the trial court commit an abuse of discretion by overruling a motion for a mistrial pursuant to [Pa.R.Crim.P.] 646 [and

---

[2]  There is no dispute that "[a] kite is a letter sent in prison from one inmate delivered by a second inmate to a third." Appellant's Brief at 10-11 (record citations omitted).

permitting] the jury to have a copy of a confession during deliberation?

4. Did the trial court err [by] denying a request to instruct the jury [that witness identification must be received with caution] and [granting the Commonwealth's request to instruct the jury on consciousness of guilt/flight]?[3]

Appellant's Brief at 8 (issue numbers supplied).

Appellant's first three issues are inter-related and, accordingly, we will examine them together. All three issues center on an unsigned letter, or "kite," Jamison purportedly received from Appellant while both men were imprisoned on charges related to this case. It read:

Yo, bro! Wassup baby? I'm chillin. As you already no they came and recharged me but you no how I am. Stand up n[****] all the way. No need to cry about it. You feel me. Just take it from here and find out who the f[***] is the surprise is. You gotta get on your lawyer top about that. That's gotta be the reason they put the separation in on us because they no you got your discovery already and they no you can find who the surprise is because you in trial status already and they don't want me to no. Feel me. Who care it is. They not locked up because I didn't have no separations down CJC. So we gotta find out ASAP so we can get that tooked care of. Stay on your lawyer a[**].

Give Weezy your lawyer number so he can be on his a[**] too. The lawyer Gary Silver came to see me but he wasn't at my court date because n[*****] bullshi[*****] giving him the money. When he came up he basically told me you good and don't understand why you charges didn't get dropped let alone why you get charged in the first place. He said even if a witness came to

_____

[3] In his fourth issue presented, Appellant also baldly contends, without any corresponding argument, that the trial court erred by failing to give jury instructions regarding impeachment and inconsistent statements. **See** Appellant's Brief at 8, 20-22. We find these aspects of Appellant's fourth claim waived. **See Commonwealth v. Perez**, 93 A.3d 829, 838 (Pa. 2014) (failure to develop an argument with citation to supporting authorities and the record are waived).

Court and tell the truth you can't get convicted because it's a third degree case all day. It wasn't planned. You had no knowledge of what the next man (the shooter) was gone do. Even if you fled the scene you was scared of getting shot. So you good.

Now me on the other hand gotta try to handle this the street way. So you gotta find that out for me, but other than that, wassup with you over there? Is it crowded? I need some get high. I get admin July 23rd. I'm chillin. Ray Ray and Donnie down here so I eat every night. I just be drinking coffee and busting on everybody, lol, even n[*****] I don't no. They be mad as s[***]. F[***] em. I go back down the 28th of this month.

N.T., 4/20/2017, at 35-36. The letter was addressed to "Eroc," Jamison's nickname and signed, "Who you already know." *Id.* at 37. In the margin of the kite, it says, "Stand tall like City Hall" and, "Love you, bro." *Id.* at 34.

At trial, the Commonwealth entered the kite into evidence over defense objection. Appellant claims the kite was not authenticated because was it was not signed, lacked an identifying inmate number, and the Commonwealth did not introduce Appellant's handwriting samples for evaluation. Appellant's Brief at 18. Appellant further argues that the kite was not properly authenticated merely because Jamison said Appellant authored it and it contained specific facts about the crimes at issue. *Id.* at 17. Appellant argues that while Jamison claimed that he could verify the kite at issue based upon his receipt of prior kites from Appellant, no prior kites were presented for comparison. *Id.* at 18. Thus, Appellant contends "the trial court improperly concentrated [on] Jamison['s] ability to self-verify the kite." *Id.* Appellant further maintains that the trial court compounded its error by inadvertently allowing the kite, which Appellant describes as a confession, to go out with

the jury during deliberations, in contravention of Pa.R.Crim.P. 646 and related case law. *Id.* at 19.

Our standard of review is as follows:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018) (internal citations and quotations omitted).

We begin with authentication of the kite. Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient authentication. *See* Pa.R.E. 901(b)(1). Authentication may also be achieved through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4). We previously determined:

A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document,

acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. A document also may be authenticated by circumstantial evidence, a practice which is uniformly recognized as permissible.

***Commonwealth v. Koch***, 39 A.3d 996, 1004 (Pa. Super. 2011) (internal citations and quotations omitted).

Moreover,

[w]e note that the ultimate determination of authenticity is for the jury. A proponent of a document need only present a *prima facie* case of **some** evidence of genuineness in order to put the issue of authenticity before the factfinders.

The court makes the preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finders of fact, but the jury itself considers the evidence and weighs it against that offered by the opposing party[.]

***Commonwealth v. Brooks***, 508 A.2d 316, 320 (Pa. Super. 1986) (internal citations omitted; emphasis in original).

The trial court determined that the kite was properly authenticated:

[T]he Commonwealth demonstrated that [the kite] referenced murder of the third[-]degree, contained displays of affection, suggested a possible defense for Jamison's criminal charges, and mirrored a style and cadence of speaking similar to the way [Appellant] and Jamison spoke to each other. Jamison positively identified [Appellant] as the writer of the letter and stated that [Appellant] often communicated with him in a manner similar to that of the letter.

Trial Court Opinion, 4/25/2018, at 5.

Upon review, we discern no abuse of discretion in determining that the kite was properly authenticated. Jamison testified that he knew Appellant for over 13 continuous years prior to trial. N.T., 4/19/2017, at 130-131. Jamison

testified that the kite was written in Appellant's handwriting. N.T., 4/20/2017, at 32-33. In the kite, there is a specific reference to Appellant meeting with his court appointed trial counsel, Gary Silver, Esquire to discuss charges. *Id.* at 35. Appellant used Jamison's childhood nickname, "Eroc," as a salutation in the kite. *Id.* at 37. The kite suggests that there is a surprise witness in the case and encourages Jamison to find out who it is and asks him not to snitch. *Id.* at 35-38. The kite, however, falls short of documenting a confession. Instead, the kite explains that Jamison could not be found guilty of third-degree murder because he fled the scene and had no knowledge of what "the shooter" was going to do. *See id.* at 36 ("[Attorney Silver] said even if a witness came to court and tell the truth, you can't get convicted because it's a third degree case all day. It wasn't planned. You had no knowledge of what the next man (the shooter) was [going] to do. Even if you fled the scene you [were] scared of getting shot. So you good."). However, the kite attributes the shooting to another person.

Here, the Commonwealth presented a *prima facie* case of authenticity through Jamison's personal knowledge that the kite was what it was claimed to be. Appellant and Jamison were childhood friends and the kite's author used Jamison's childhood nickname and terms of affection. The kite also specifically referenced Appellant's court-appointed counsel by name and employed colloquial language similar to other communications between Appellant and Jamison. The substance and content of the kite dealt with detailed factual issues pertaining to Appellant and this case. As such, we

discern no abuse by the trial court in determining the kite was properly authenticated.

Next, we examine whether the trial court erred in allowing the kite to go out with the jury during its deliberations. This Court has found:

> Ordinarily, whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge.
>
> This discretion, however, is not absolute. Pennsylvania Rule of Criminal Procedure 646 expressly forbids juries from having certain enumerated categories of exhibits during deliberations, including written defendant confessions. **See** Pa.R.Crim.P. 646(C). The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood that the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

***Commonwealth v. Miller***, 172 A.3d 632, 648 (Pa. Super. 2017) (quotations, original brackets, and case citations omitted).

Here, the trial court "concluded that the letter was not a confession, and thus its admission did not prejudice [Appellant] or result in an unfair trial." Trial Court Opinion, 4/25/2018, at 9. The trial court further found that the kite was only in the jury's possession for less than 30 minutes. Thus, the trial court determined the kite could not have impacted the jury's decision in light of the fact that they heard it read into the record in its entirety and the Commonwealth highlighted it during closing arguments. ***Id.*** at 9-10. Upon review, we agree with the trial court's assessment.

Primarily, we note that Appellant concedes that, "defense counsel initially consented to the kite going back with the jury deliberations." Appellant's Brief at 19; **see also** N.T., 4/24/2017, at 11 and 13 ("the initial position of defense counsel had been that the kite would go out."). Defense counsel changed tack later, arguing "the determination of a confession is liberally viewed at this time by the appellate courts[; a]s such, it could be construed in this letter, even though it wasn't specifically [Appellant's] position and has not been [Appellant's] position that it was a confession, but it can be construed to be a confession in this manner." N.T., 4/24/2017, at 15. Appellant did not change his argument until after the jury already had the kite. Thus, Appellant waived his arguments that the kite was a confession and that it should not have gone out with the jury. **See Commonwealth v. Roles**, 116 A.3d 122, 130 (Pa. Super. 2015) ("Trial counsel specifically stated on the record that he had no objection to the documents that were given to the jury. Thus, even if the exhibits were somehow included among the admitted exhibits provided to the jury, the issue is waived.").

Moreover, we discern that the kite did not constitute a confession by Appellant. "Confession" is defined as "[a] criminal suspect's oral or written acknowledgment of guilt, often including details about the crime." BLACK'S LAW DICTIONARY (10th ed. 2014). Appellant never admits or denies shooting the victim in the kite. Instead, he makes reference to "the shooter" or "the next man." There were no factual details provided about the crime. The proffered kite simply did not rise to the level of a confession. Thus, Appellant is not

entitled to relief on his claim that the trial court abused its discretion under Rule 646.

Finally, upon our review of the record, we observe that the trial court charged the jury on a Friday, but they did not start their deliberations until the following Monday morning. N.T., 4/24/2017, at 10. On Monday, the jury asked to see the kite. *Id.* at 11. The trial court only realized that the kite had gone out with the jury when they requested to see it. *Id*. The parties conceded that "the kite was inadvertently presented to the jury and they had it in their possession [] for some 30 minutes." *Id.* at 12. Hence, it appears that the jurors had the kite for 30 minutes at the beginning of their deliberations, but still asked to see it. Because they were not even aware that the kite was in their possession, they could not have reviewed it. Subsequently, "after the kite was taken back from the jury, [but] before [the trial court] could [call] the jury out for curative or cautionary instructions," the jury had decided the verdict. *Id.* at 20. Accordingly, from our review of the certified record, it is not entirely clear whether the jury was aware that the kite was in its possession during deliberations or otherwise relied upon it in rendering the verdict.

Next, Appellant challenges the trial court's denial of a jury instruction regarding witness identification pursuant to ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954) and the trial court's grant of the Commonwealth's request to charge the jury on flight and consciousness of guilt. On these issues, Appellant argues, in sum:

Trial counsel requested a ***Kloiber*** charge relating to inconsistencies in the identification of [Appellant] and objected to the flight charge. The request was based on the inconsistencies in the identification of [Appellant] and the description of the shooter as alternatively being five foot six inches or six foot two inches tall. The witnesses varied regarding the clothing the shooter was wearing and the shooter's locations throughout the trial. The request for the charge was appropriate and the failure to give the charge was reversible error because it was warranted by the evidence [i]n the case.

Giving the flight charge was inappropriate. The testimony elicited was that individuals involved after the shooting fled to a white vehicle and drove off immediately. The distinction is leaving the scene immediately after altercation versus flight to avoid arrest. [Appellant] was arrested at his home. For this charge to be correct then every individual who is not arrested immediately at the scene of the crime would be a factual circumstance justifying giving this charge.

Appellant's Brief at 21-22.

"Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Yale***, 150 A.3d 979, 983 (Pa. Super. 2016) (citation and brackets omitted).

We have summarized the law regarding the ***Kloiber*** charge as follows:

[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

***Commonwealth v. Kloiber***, 106 A.2d 820, 826–827 (Pa. 1954).

The **Kloiber** charge alerts the jury where a witness might be physically incapable of making a reliable observation. This inquiry is distinct from the credibility determination a fact-finder must make. Our Supreme Court has found that even where witnesses were

> under the influence of alcohol, the room was dark, they had been awakened from sleep, and the events being observed were confusing ... Appellant's objections relate to the credibility of the eyewitness testimony, not to the actual physical ability of the witnesses to observe.... Accordingly, a **Kloiber** charge was not required.

**Commonwealth v. Paolello**, 665 A.2d 439, 455 (Pa. 1995).

**Commonwealth v. Collins**, 70 A.3d 1245, 1255 (Pa. Super. 2013).

In this case, two eyewitnesses saw the entire shooting from close, unobstructed vantage points. Appellant's **Kloiber** charge argument is based upon minor inconsistencies in their testimony. However, Appellant does not argue that the witnesses were physically incapable of making reliable observations. Appellant's objections related solely to the eyewitnesses' credibility in making out-of-court identifications. However, both eyewitnesses unequivocally identified Appellant as the shooter at trial. Accordingly, a **Kloiber** charge was not warranted. As such, we conclude the trial court did not err in failing to issue a **Kloiber** jury instruction.

Finally, in examining Appellant's claim that the trial court erred by giving an instruction on flight and consciousness of guilt, our Supreme Court has stated:

A jury instruction is proper if supported by the evidence of record. [...W]hen a person commits a crime, knows that he is wanted

therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred.

*Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008) (internal citations omitted). A reviewing court "need not determine whether or to what extent a flight instruction must be supported by evidence other than an accused's departure from the scene of the crime." *Id.*

Here, there is no dispute that Appellant fled the scene following the shooting. Upon review, the trial court gave the following instruction:

There was evidence, including the testimony of Eric Jamison, that tended to show that [Appellant] fled from Dell Music Center after the shooting in this case by driving from the scene at a high rate of speed. The credibility, weight and effect of that evidence is for you to decide.

Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing that crime or those crimes and he flees, such flight is a circumstance tending to show the person is conscious of guilt.

Such flight does not necessarily show consciousness of guilt in every case. A person may flee for some other motive and may do so even though innocent.

Whether the evidence of flight in this case should be looked at as tending to show consciousness of guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight.

You may not find [Appellant] guilty solely on the basis of evidence of flight.

N.T., 4/21/2017, at 22-23. The evidence of record supported the instruction and the trial court's charge gave an accurate statement of the law.

- 14 -

Accordingly, for all of the foregoing reasons, there was no trial court error regarding jury instructions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19