J-S35026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID LESLIE BARKSDALE | : | |
| | : | |
| Appellant | : | No. 2107 MDA 2019 |

Appeal from the PCRA Order Entered November 27, 2019,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0003560-2015.

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: FEBRUARY 7, 2022**

David Leslie Barksdale appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

In Barkdale's direct appeal, we summarized the pertinent facts as follows:

> On June 24, 2014, Officer Duane Pyles responded to a dispatch call indicating there was a previously reported missing person and a strange odor in a basement. He and his partner arrived at the scene and[,] upon knocking on the door, were greeted by two residents of the home, as well as a stench that made it clear to him that there was something dead in the home. One of these residents, [Barksdale], indicated he believed he had seen an ankle in the back of the basement. Suffice it to say, Officer Pyles made his way to the basement and saw maggots crawling away from the

_____

[*] Retired Senior Judge assigned to the Superior Court.

back corner. Officer Pyles thought he saw something under a board so[,] using his baton[,] he lifted the board a bit and saw what he recognized as a human joint. Officer Pyles and his partner backed out of the basement and called a supervisor to the scene.

The body was identified as [83-year-old] Peggy Swann. She had previously been reported missing by Barksdale. On June 8, 2014, Barksdale and a few friends got into an argument. Barksdale was called names and[,] in defending himself[,] indicated that he was sleeping with Ms. Swann, amongst others. The friends, Bonita Crummel and Michelle Black, were concerned and called Ms. Swann to ask if she was sleeping with Barksdale. She told them she was but it was not by choice. They agreed on a course of action that included meeting with Peggy the following day and reporting this to the Dauphin County Area Agency on Aging (hereinafter "[Agency]"). Then they told Barksdale that they were reporting him to [the Agency]. Barksdale was angry and yelled at them and then hung up the phone. They called back several times to no avail.

[The friends] did make the report to [the Agency] on June 9, 2014; however, because they were unable to make contact with Peggy, they did not go to [meet her]. [The Agency] then went out to make contact with Peggy; however, they were unable to locate her. In the late night of June 9 or early June 10, Barksdale called Bonita Crummel to tell her that Peggy was missing.

Approximately nine months after Swann's body was discovered, Barksdale was arrested and charged. A jury trial was held on December 7-9, 2016, at which time the Commonwealth proceeded on the theory that Barksdale murdered Swann because he was aware that the Agency was about to begin an investigation into the nature of his sexual relationship with [Ms. Swann], as well as possible financial abuse. Barksdale was found guilty of first-degree murder on December 9, 2016, and the court sentenced him that same day to a term of life imprisonment. Barksdale's post-sentence motions were denied[.]

*Commonwealth v. Barksdale*, 188 A.3d 502 (Pa. Super. 2018), non-precedential decision at 1-2 (formatting altered; citation omitted).

Barksdale filed a timely appeal to this Court. On March 6, 2018, we affirmed his judgment of sentence. **Barksdale**, **supra**. On September 14, 2018, our Supreme Court denied Barksdale's petition for allowance of appeal.

On December 13, 2018, Barksdale filed a *pro se* PCRA petition, as well as an amended petition the next day. The PCRA court appointed counsel, and PCRA counsel filed a supplement to Barksdale's petition on April 2, 2019. On May 3, 2019, the Commonwealth filed a memorandum in opposition to Barksdale's PCRA petition. On October 1, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intention to dismiss Barksdale's petition without a hearing. Barksdale did not file a response. By order entered November 27, 2019, the PCRA court dismissed Barksdale's petition. This appeal followed. Both Barksdale and the PCRA court have complied with Pa.R.A.P. 1925.[1]

On appeal, Barksdale asserts that the PCRA court erred in dismissing his PCRA petition without a hearing because he raised multiple ineffective assistance of counsel claims that raised numerous factual issues. Barkdale's

---

[1] In its Rule 1925(a) opinion, the PCRA court addressed an issue not previously addressed in its October 1, 2019, opinion that accompanied its Rule 907 notice, which addressed twenty-nine issues raised by Barksdale in both his *pro se* and amended PCRA petitions. The PCRA court referenced this opinion to address the remaining claims Barksdale raised in his Rule 1925(b) statement. In its brief, the Commonwealth also addresses all twenty-nine issues.

PCRA counsel discusses the following nine alleged instances of ineffective assistance of trial counsel:

1. Trial counsel [failed] to request mental health records or request a competency evaluation of Commonwealth witness Tracy Mitchell.

2. Trial counsel failed to investigate and call Isaura Simpson-Perez as a defense witness[.]

3. Trial counsel failed to seek a mistrial or curative instruction when the Commonwealth introduced hearsay testimony from Isaura Simpson-Perez[.]

4. Trial counsel failed to properly prepare a defense, including failure to obtain evidence and failure [to] impeach impeachable witnesses[.]

5. Trial counsel failed to require conversations [Barksdale] had with [the Agency to be played] in full.

6. Trial counsel failed to allow [Barksdale] to participate during *voir dire*, with no reasonable basis and resulting in prejudice.

7. Trial counsel failed to remove a sleeping juror[.]

8. Trial counsel failed to file an Omnibus Pretrial Motion contesting the admission of statement obtained by police officers from [Barksdale] while he was in an intoxicated state[.]

9. Trial counsel was ineffective for failing to prepare and investigate, specifically [the] failure to obtain and have tested various boards and clothing left behind by the police at the crime scene.

Barksdale's Brief at 25-38 (excess capitalization omitted).[2]

---

[2] Barksdale filed a motion for change of appointed PCRA counsel on January 3, 2020. The PCRA court scheduled a hearing on the motion for February 18, 2020. On January 31, 2020, this Court issued an order directing the PCRA court to hold an "on-the-record inquiry" to determine if Barksdale wished to

*(Footnote Continued Next Page)*

- 4 -

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

---

proceed with appointed counsel or *pro se*. We further directed that, if Barksdale chose to proceed *pro se*, the PCRA court should hold a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

The PCRA court scheduled a **Grazier** hearing for March 25, 2020, because Barksdale wished to appear in person. This hearing was not held, however due to the COVID-19 virus outbreak. The PCRA court stated that it would reschedule the meeting whenever the courts reopened to the public.

By order entered July 13, 2020, this Court reiterated its previous order and directed the PCRA court to hold a **Grazier** hearing at which Barksdale could appear by video. The PCRA court did so on August 4, 2020. Following this hearing, the PCRA court permitted PCRA counsel to withdraw and appointed current PCRA counsel.

On January 21, 2021, Barksdale filed an application for remand for a **Grazier** hearing regarding whether he wished to proceed *pro se* rather than being represented by current PCRA counsel. On March 3, 2021, the PCRA court informed this Court that it held such a hearing on March 2, 2021, and that Barksdale indicated that he would not like to proceed *pro se*. Therefore, current PCRA counsel continues to be the attorney of record for Barksdale. Barksdale filed a subsequent request for remand, which resulted in the same disposition. Thereafter, this Court denied Barksdale's third request for a remand to conduct a **Grazier** hearing.

Beginning on November 23, 2021, Barksdale has filed a series of applications for relief in which he claimed that current PCRA counsel has essentially abandoned him. As PCRA counsel raised and argued nine issues in this appeal, we found no merit to the claim of abandonment. We therefore deny all outstanding applications for relief filed by Barksdale.

Moreover, when deciding whether an evidentiary hearing is required, we observe:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

All of Barksdale's substantive issues challenge the effectiveness of trial counsel.[3] To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no

---

[3] Barksdale had two attorneys represent him at trial. For ease of discussion, we will refer to them as "trial counsel."

reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

In his first claim, Barksdale asserts that trial counsel was ineffective for failing to request mental health records or a competency evaluation of Commonwealth witness Tracy Mitchell. The PCRA court found that Barksdale could not meet any of the prongs of the ineffectiveness test:

> First, [Barksdale] has failed to demonstrate that the underlying legal issue has any sort of arguable merit. At [his] jury trial, Ms. Mitchell was called as a witness for the Commonwealth. Before she was permitted to testify before the members of the jury, both attorneys were given the opportunity to examine the witness as to her competency. It was very clear to [the trial court] that Ms. Mitchell possessed the mental capacity to testify and to recall the events she witnessed truthfully. Specifically, she knew the date, the medications she was currently taking, that she was subpoenaed by [the trial court], and most importantly she could recognize the difference between a truth and a lie.

> Second, [Barksdale] has failed to show that his counsel's actions lacked an objective reasonable basis. Clearly, counsel did not need to request Ms. Mitchell's mental health records because a competency evaluation was completed on the record. Further, "[a]n attorney's chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Cox*, 983 A.2d 666 ([Pa.] 2009). It is [the PCRA court's] belief that no other alternative strategy chosen by [Barksdale's] trial counsel would have rendered a substantially greater result in his case. Additionally, [Barksdale] and his PCRA counsel failed to proffer any other alternative.

Finally, we do not see where [Barksdale] could have been prejudiced by his trial counsels' action. As previously stated, a competency evaluation was completed on the record to the satisfaction of [the trial court]. Further, [Barksdale] fails to realize that Ms. Mitchell's mental health records would have been beyond his reach, as such records are protected and confidential without the signed consent of the patient. Therefore, any request for mental health records would likely have been a fruitless endeavor. Thus, we find no merit in this claim.

PCRA Court Opinion, 10/1/19, 6-7 (citation omitted).

Our review of the record supports the PCRA court's conclusions. Claims of ineffectiveness cannot be raised in a vacuum. *Commonwealth v. Thomas*, 783 A.2d 328, 333 (Pa. Super. 2001). "This Court will not consider claims of ineffectiveness without some showing of factual predicate upon which counsel's assistance may be evaluated." *Id.* (citation omitted). Here, the trial court found Ms. Mitchell competent to testify. Thus, Barksdale's claims about her mental health issues amount to no more than "bare assertions" that provide no basis for a conclusion that counsel was ineffective. *Id.*

In his second claim, Barksdale asserts that trial counsel failed to investigate and call Isaura Simpson-Perez as a defense witness. Ms. Simpson-Perez was living as a tenant with Ms. Swann and Barksdale and was with him when the police discovered Ms. Swann's body in the basement. According to Barksdale, Ms. Simpson-Perez wrote a letter to Ms. Swann's granddaughter in which she confessed to killing Ms. Swann.

To establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Hall*, 867 A.2d 619, 629 (Pa. Super. 2005) (citation omitted).

While Ms. Simpson-Perez had the potential to be called as a witness, and trial counsel clearly knew of her existence, Barksdale cannot establish all the *Hall* factors. He has failed to proffer sufficient facts to establish that she was available and willing to cooperate with the defense--given Barksdale's assertion that she confessed to murdering Ms. Swann. Barksdale only speculates that she would have cooperated and that her testimony would have aided his defense. Moreover, the PCRA court reviewed the letter at issue and concluded that Barksdale mischaracterized it:

> First, we must note that [Barksdale's] brief asserts [Ms.] Simpson-Perez was a potential suspect because she wrote an "apology confession letter" which [Barksdale] attached as "Exhibit I" in his initial brief.
>
> ***
>
> [Barksdale] argues now that his counsel was ineffective for failing to interview or investigate [Ms.] Simpson-Perez regarding her alleged "confession letter." . . . After review of the alleged "confession" letter, we find no merit in this argument either. [The PCRA court] was able to ascertain from Ms. Simpson-Perez's letter that she was informing a family member of the victim, Peggy Swann, of her death.

No "confession" was present. Thus, there was nothing for trial counsel to investigate. Further, [Barksdale] "confessed" to the killing of Ms. Swann to multiple individuals.

PCRA Court Opinion, 10/1/19, 7-10. Thus, for the above reasons, Barksdale's second claim fails.

In his third claim, Barksdale asserts that trial counsel was ineffective for failing to seek a mistrial or curative instruction after a Commonwealth witness, Benjamin Palmer, provided hearsay evidence regarding Ms. Simpson-Perez. He further notes that the Commonwealth did not call her as a witness even though it informed the court of its intention to do so. The PCRA court found no merit to this claim because "no hearsay testimony was admitted through Benjamin Palmer." PCRA Court Opinion, 12/15/20, at 5. Our review of the record supports the PCRA court's reading of Mr. Palmer's testimony. The record also supports the PCRA court's statement that the Commonwealth informed the court that it would call Ms. Simpson-Perez. *Id.* at 4. However, the fact that the Commonwealth later chose not to call her did not prejudice Barksdale because no hearsay testimony was introduced. Thus, there was no need for trial counsel to seek a mistrial or curative instruction. Barksdale's third ineffectiveness claim does not entitle him to relief.

In his fourth claim, Barksdale broadly asserts that trial counsel failed to prepare a proper defense, including obtaining evidence and impeaching certain Commonwealth witnesses. In support of a potential defense, Barksdale again considers Ms. Simpson-Perez a suspect because of her

"confession" letter. He also faults trial counsel for failing to effectively cross-examine the following Commonwealth witnesses: 1) Bonita Crummel; 2) Michelle Black; 3) Kathy DeHaven; 4) Benjamin Palmer; 5) Officer Matthew Gallup; and 6) Ian Munz and Corey Williams, the jailhouse informants who testified that Barksdale confessed that he killed Ms. Swann. **See** Barksdale's Brief at 32-33.

The PCRA court addressed trial counsel's cross-examination of each of these witnesses and found that Barksdale's assertions were refuted by the record. The court first found that it properly permitted Ms. Crummel and Ms. Black to testify regarding Barksdale's relationship with Ms. Swann. **See** PCRA Court Opinion, 10/1/20, at 11-13.[4] Regarding Ms. Black, the PCRA court rejected Barksdale's claim because "trial counsel explicitly questioned Ms. Black about her inconsistent testimony at trial." **Id.** at 13.

The PCRA court also rejected Barksdale's claim that trial counsel was ineffective in cross-examining Ms. DeHaven about inconsistent statements she made regarding the last time she had seen Ms. Swann. According to the PCRA court, "trial counsel very explicitly asked Ms. [DeHaven] about the last time she had seen [Ms. Swann]. In addition, the PCRA court noted that Ms.

---

[4] In its brief, the Commonwealth argues that Barksdale's claim regarding the testimony of these women was previously litigated in his direct appeal. **See** Commonwealth's Brief at 19; 42 Pa.C.S.A. § 9544(a). Although this Court found their testimony relevant and admissible, Barksdale now challenges the adequacy of trial counsel's cross-examination of them, which is a separate issue.

DeHaven "even indicated in response to [trial] counsel's questioning that she had seen Ms. Swann on June 9, 2014, because [Barksdale] had offered to mow her lawn to allow her to go talk with [Ms. Swann]." *Id.* This statement was consistent with testimony Barksdale would later provide in his defense.

The PCRA court also rejected Barksdale's claim regarding the cross-examination of Benjamin Palmer because trial counsel "very clearly asked the witness whether he had [Ms. Swann's] phone number in his pocket at the time of [his] arrest." *Id.* The PCRA court further opined that "trial counsel effectively cross-examined Officer Gallup, even getting Officer Gallup to admit that his prior testimony regarding whether he saw Tracy Mitchell was incorrect." *Id.* at 13-14

Finally, the PCRA court rejected Barksdale's claim that trial counsel failed to attack the credibility of jailhouse informants, Ian Munz and Corey Williams, upon cross-examination. The PCRA court explained:

> [W]e believe that trial counsel effectively cross examined both witnesses, and in doing so, challenged their credibility. During Mr. Munz's testimony, defense counsel recognized inconsistencies with Mr. Munz's recorded statement and the statements he was making at trial and specifically questioned him about it. As for Mr. Williams, trial counsel engaged in in-depth questioning regarding the number of times the witness had been in and out of jail for violations of his parole and the reasons behind each violation. Thus, we believe that trial counsel properly challenged the credibility of both "jailhouse informants" and [Barksdale's] claim is meritless.

*Id.* at 18 (citations omitted).

Our review of the record supports all the PCRA court's conclusions; trial counsel effectively cross-examined each of these witnesses. In addition, our reading of the transcripts from the jury trial reveals that trial counsel presented a clear defense by arguing that Benjamin Palmer had a clear motive for murdering Ms. Swann. **See** N.T. (closing argument); **see also Barksdale**, non-precedential decision at 4 (recognizing that "Barksdale's defense was based largely on his assertion that an individual named Benjamin Palmer actually killed [Ms.] Swann during the course of a robbery").[5] Thus, Barksdale's fourth claim is without merit.

In his fifth claim, Barksdale asserts that trial counsel was ineffective for failing to request that his voicemails left with the Agency on Aging be played in the entirety because he was allegedly "prejudiced by the fact the Commonwealth hand picked parts of messages for the purpose of making [him] look bad." Barksdale's Brief at 34. According to Barksdale, he "suffered a prejudice because the jury could not hear his overwhelming concern for his missing friend." **Id.**

---

[5] As part of this issue, Barksdale also claims that trial counsel was ineffective for failing to call Tim Farner as a defense witness to impeach the credibility of the jailhouse informants. The PCRA court did not address this issue because "[Barksdale' and his PCRA counsel have failed to provide any indication to [the PCRA court] that witnesses with the ability to discredit the Commonwealth's informants even existed." PCRA Court Opinion, 10/1/19, at 20. Thus, it appears Barksdale is raising Mr. Farner's name for the first time on appeal, which results in waiver.

The PCRA court rejected this claim because it was not sufficiently developed:

> [The PCRA court] is at a loss if words in responding to this claim as neither [Barksdale] nor his PCRA counsel have addressed this issue at length. [Barksdale's] brief only states that counsel was ineffective in this regard because "the jury [needed] to receive the full and correct context of the messages rather than just the points of these recordings that were favorable to the Commonwealth." Here, [Barksdale] fails to point specifically to any portions of the recorded conversations that would have given the jury the "full and correct context of the messages." Further, he does nothing to aid [the PCRA court] in discerning what the jury would have heard had the full conversations been played. Thus, we find no merit to this claim.

PCRA Court Opinion, 10/1/20, at 14-15.

Barksdale's argument as to this claim remains undeveloped in his appellate brief. As noted above, claims of ineffectiveness cannot be raised in a vacuum. **Thomas**, **supra**. Our review of the record reveals that Barksdale left approximately 18 voicemails with the Agency on Aging over an approximate three-week period. **See** N.T., 12/6/16, at 303. Barksdale does not develop why the jury needed to hear the entirety of all the voicemails or even the one's specifically used by the Commonwealth at trial. As this claim is undeveloped, we will not consider it further. **See Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).

In his sixth claim, Barksdale asserts that trial counsel was ineffective for failing to allow him to participate during the *voir dire* process when selecting

his jury. He asserts that trial counsel told him to "shut up" when he attempted to participate. Barksdale's Brief at 35. Although he acknowledges case law which provides that certain decisions regarding the conduct of *voir dire* are properly made by counsel alone, he nevertheless asserts that "*voir dire* is an important part of the trial process." ***Id.*** (citing ***Commonwealth v. Hunsberger***, 58 A.3d 32, 37 (Pa. 2012). According to Barksdale, "[w]hile there may be no law that requires trial counsel to consult with their client during [*voir dire*], refusing to allow the client to give input in the [*voir dire*] process is unreasonable." ***Id.***

In rejecting Barksdale's claim, the PCRA court cited ***Hunsburger***, ***supra***, and concluded that, "[e]ven if [Barksdale's] assertions regarding trial counsels' comments during *voir dire* are correct, this would be harmless error and would entitle [Barksdale] to no relief. PCRA Court Opinion, 10/1/20, at 16. We agree. Although the *voir dire* process was transcribed, Barksdale does not direct us to where in these proceedings trial counsel made the alleged statement to him. Barksdale's self-serving statement is not sufficient to require an evidentiary hearing. Thus, Barksdale's sixth claim fails.

In his seventh claim, Barksdale asserts that trial counsel was ineffective for failing to request the removal of a juror who fell asleep during the testimony of one of the Commonwealth's expert witnesses. ***See*** N.T., 12/7/16, at 647 (trial court offered to remove Juror 5, "who looked like she

had fallen asleep towards the end of cross-examination of Dr. Dirkmatt," but trial counsel declined).

In rejecting this claim, the PCRA court relied upon this Court's decision in **Commonwealth v. Lawson**, 762 A.2d 753 (Pa. Super. 2000), in which we held that a defendant must show that he suffered prejudice because of the sleeping juror. The PCRA court then opined its belief that "the outcome of [Barksdale's] case would have been no different had the juror not been sleeping." PCRA Court Opinion, 10/1/20, at 21. We agree. Other than claiming that this expert's testimony "was critical to the Commonwealth's case," Barksdale does not attempt to prove prejudice. Thus, Barksdale's seventh claim is without merit.

In his eighth claim, Barksdale asserts that trial counsel was ineffective for failing to file a suppression motion to challenge the admission of inculpatory statements he made to police officers while he was intoxicated. The PCRA court interpreted this claim as one involving a failure to request a voluntary intoxication instruction to support a third-degree murder conviction. The court found no merit to this claim because, even if Barksdale could establish a diminished capacity defense, the jury was instructed on third-degree murder, but found him guilty of first-degree murder. As the PCRA court explained:

> Even if [Barksdale] was entitled to a voluntary intoxication defense, he would still be held as criminally liable[,] and it would only entitle him to have the charge of

- 16 -

> [first-degree] murder mitigated to third degree. Seeing as
> [the trial court] provided a jury instruction for third degree
> murder to the jury, we do not see that [Barksdale] could
> have been prejudiced in any way. Additionally, we do not
> believe that [Barksdale] set forth sufficient evidence to
> establish he was entitled to a voluntary intoxication defense,
> at it is a "very limited defense for first degree murder."
> [**Commonwealth v. Bardo**, 105 A.3d 678, 716 (Pa.
> 2014)]. Thus, we find this claim to be meritless.

PCRA Court Opinion, 10/1/19, at 22. Our review of the record supports the

PCRA court's conclusions. Very little evidence regarding Barksdale's

intoxication at various times during the investigation into Ms. Swann's death

was introduced at trial. Moreover, he does not identify which evidence

supports this argument. Thus, Barksdale cannot demonstrate that he was

entitled to a voluntary intoxication instruction. Barksdale's eighth claim fails.

In his ninth and final claim, Barksdale specifically claims that trial

counsel was ineffective for failing to obtain and have DNA testing performed

on certain items left at the crime scene. According to Barksdale, these items

"would have revealed, if properly [tested], DNA belonging to someone other

than" him. Barksdale's Brief at 38.

The PCRA court found no merit to this claim:

> [Barksdale] next asserts that trial counsel was ineffective
> for failing to request forensic DNA testing on exculpatory
> evidence left at the scene of the murder. Specifically, he
> asserts that "the tan plain jacket, tank top, and piece of
> paneling, all of which were covering or underneath [Ms.
> Swann's] body" had not been tested to reveal evidence that
> "could have potentially yielded results to exonerate [him].
> There is nothing to suggest that these items would have
> yielded exculpatory evidence, and [Barksdale and PCRA
> counsel] fail to detail why the listed items would have been

- 17 -

> exculpatory. Further, [neither Barksdale nor PCRA counsel] assert what if anything DNA testing of these items would have revealed. Thus, we believe this claim is also meritless.

PCRA Court Opinion, 10/1/19, at 10-11.

Our review of the record supports the PCRA court's conclusion. Although Barksdale now claims in his brief that DNA testing on these items would have revealed DNA belonging to someone else, he does not adequately explain how this fact would tend to exonerate him. Barksdale's claim amounts to no more than speculation; Ms. Swann's body was found in a "hoarder" basement that was cluttered with many items. Thus, Barksdale's bare assertion does not entitle him to an evidentiary hearing. **See Commonwealth v. Clark**, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer, a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

In sum, we agree with the PCRA court's conclusion that the nine claims of ineffective assistance of counsel raised in Barksdale's Brief are without merit. Before an evidentiary hearing will be granted, a PCRA petitioner "must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective." **Commonwealth v. Begley**, 780 A.2d 605, 635 (Pa. 2001) (quoting **Commonwealth v. Pettus**, 424 A.2d 1332, 1335 (Pa. 1981)). Barksdale did not do so. Given these circumstances, the PCRA court did not

err in dismissing Appellant's PCRA petition without first holding an evidentiary hearing.

Applications for relief denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2022