J-S09029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CALVIN CAMPS | : | |
| | : | |
| Appellant | : | No. 1389 EDA 2021 |

Appeal from the PCRA Order Entered June 11, 2021,
n the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0003915-2014.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 27, 2022**

Calvin Camps appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA")[1] following his convictions for aggravated assault and possessing an instrument of crime.  We affirm.

In Camps' direct appeal, we reproduced the trial court's summary of the pertinent facts as follows:

> On January 17, 2014, [the victim] was at a speakeasy, located on the 2800 block of North Park Avenue in Philadelphia, getting a drink.  [The victim], with her drink in hand, then stepped outside of the speakeasy to get to the corner.  [Camps], who had previously sold drugs to [the victim], approached [the victim] in the street and accused

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-46.

her of using a counterfeit $20 bill during an earlier drug transaction. The two began arguing and [the victim] threw her drink in [Camps'] face. [Camps] then slashed [the victim] in the face from her left ear to her left cheek with a blade, causing blood to run from her face "like water."

[The victim] ran to a nearby fire station[,] where the firefighters called an ambulance, which transported [the victim] to Temple University Hospital. At the hospital, doctors ensured that her facial nerves were not severed, though [the victim] was unable to lift her left eyebrow, and performed surgery to clear a blood clot in her face. Additionally, an artery in her face was severed, requiring a clamp on the artery to stop the bleeding. [the victim's] salivary glands, the lower part of her left eye, and corner were also cut. Her wound was approximately five millimeters deep. A doctor had to sew her wound shut using multiple layers of stitching.

Once discharged from the hospital, [the victim] began to search for Camps. On February 18, 2014, [the victim] located [Camps] selling drugs, but she did not call the police for fear of angering the other drug dealers on the block. On February 20, 2014, [the victim] again saw [Camps] at a gas station near where she was attacked and called police, who arrested [Camps].

*Commonwealth v. Camps*, 181 A.2d 1281 (Pa. Super. 2017), non-precedential decision at 1-2 (citation omitted).

On June 2, 2016, a jury convicted Camps of aggravated assault and possessing an instrument of crime. Thereafter, the trial court imposed an aggregate sentence of five to fifteen years of imprisonment. The trial court denied Camps' post-sentence motion.

Camps appealed to this Court claiming that the trial court erred and/or abused its discretion by denying his pretrial motion *in limine* to introduce evidence of the victim's "schizophrenia diagnosis and untreated status[.]"

*Camps*, *supra*, non-precedential decision at 3. In finding no merit to this contention, we agreed with the trial court that Camps "failed to present a medical, psychiatric or expert report, or any other evidence demonstrating that [the victim's] diagnosis of schizophrenia was relevant to her credibility and her ability to recall the event and communicate what happened[.] *Id.* at 5-6. We therefore affirmed his judgment of sentence on December 29, 2017. Camps did not seek further review.

On December 20, 2018, Camps filed a *pro se* PCRA petition, and the PCRA court appointed counsel. PCRA counsel filed an amended petition and two supplemental petitions. On April 30, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Camps' PCRA petition without a hearing. Camps did not file a response. By order entered June 11, 2021, the PCRA court dismissed Camps' petition. This appeal followed. Both Camps and the PCRA court have complied with Pa.R.A.P. 1925.

Camps raises the following issue on appeal:

1. Did the [PCRA] court err, abuse its discretion, and/or make a mistake and/or error of law when it denied, [Camps' PCRA] petition seeking relief, without an evidentiary or other hearing, when the PCRA court reasoned it lacked merit, when [Camps] claimed his trial attorney was ineffective . . . for failing to consult with and/or call an expert witness within the mental health care profession, regarding whether the only eyewitness who admitted to using illegal narcotics immediately before the incident and having schizophrenia was able to accurately perceive the criminal event.

Camps' Brief at 2.

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Camps' issue challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her

action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

As noted above, Camps asserts that trial counsel was ineffective for failing to call a mental health expert to impeach the testimony of the victim. According to Camps, "trial counsel never consulted with an expert about the effects cocaine, alcohol, and schizophrenia could have on a person's ability to accurate[ly] view and recollect those events to others." Camps' Brief at 6.

To establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Hall***, 867 A.2d 619, 629 (Pa. Super. 2005) (citation omitted).

To establish the ***Hall*** factors, Camps attached to his PCRA petition a single page report from Mobin Chadha, a licensed clinical social worker. This report provided the following:

> [The victim's] medical case file was referred to Mobin Chadha, LCSW by [PCRA counsel] for review of potential impact from medical history and treatment affecting [the

victim's] decision making and ability to participate in identifying [Camps].

From the collateral information received, at time of incident, [the victim] was a 38 year old female presented to hospital for stab wounds on left side of her face. Reports indicate she presented with significant pain and corneal abrasions. Operating Room and medical treatment was noted at Temple University from 1/18/14 to 1/19/14. Medically, [the victim] also carries the diagnosis of Schizophrenia, Seasonal Allergies, and Bipolar Disorder. Some of her medications include Percocet, Zyprexa, and Acetaminophen. [The victim's] chart indicates that she sustained severe pain, and appeared incoherent at the hospital, requiring medication supports. Socially, [the] medical report[s] indicate use of crack/cocaine [] once a week.

Based on brief collateral information and medical charts, it is unclear if [the victim's] judgment may have been impaired. A further evaluation will be helpful in understanding [the victim's] insight, judgment, and presentation at [the] time of identifying [Camps]. [The victim] appeared to have [a] long standing psychiatric history. There is no clear indication or evaluation noted on the medical charts regarding psychiatric stabilization. Although one of the notes [did] indicate [the victim] presented anxious, it does not further elaborate if [she] was psychiatrically stable or exhibited any level of mood instability. Combination of medical trauma (i.e. to eye), medications taken, and psychiatric history (if untreated- although unknown) can possibly affect her ability to accurately perceive, remember, and communicate what happened. A further evaluation will be beneficial. Time frame from medical trauma, medications taken, and identification may impact ability to clearly identify someone. Medical charts continue to indicate that some prescribed medications can impair decision making for at least 24[ ] hours. At this time, there is limited information provided to accurately determine [the victim's] state of mind or ability to perceive things accurately.

Letter, 10/4/20, at 1. According to Camps, the review by Ms. Chadha "instantly demonstrated the only eyewitness had significant potential issues with perception." Camps' Brief at 6.

The PCRA court concluded that Camps' reliance upon Ms. Chadha's report did not entitle him to post-conviction relief, because he could not establish prejudice:

> Here, [Camps] has failed to proffer evidence that he could establish that he was prejudiced by trial counsel's decision not to obtain an expert to impeach the testimony of the victim[.] . . . The report does not address any possible impact of [the victim's] drug use.
>
> ***
>
> Ms. Chadha's proffered testimony, as set forth in her report, would not have been admissible at trial. The report is grounded on mere possibilities instead of a reasonable degree of medical certainty. . . . Because [Camps] failed to proffer evidence to establish [the victim's] medical condition "impaired her perception or recall of the critical events at the heart of this case," the trial court would have properly excluded Ms. Chadha's testimony if she had been available to testify at [Camps'] trial. Moreover, even if the court were to have permitted Ms. Chadha to testify, her testimony would not have been helpful to the defense.

PCRA Court Opinion, 8/12/21, at 5-6 (citation omitted) .

Our review of the record and appliable law regarding the admission of expert testimony supports the PCRA court's conclusions. According to Camps, he "was greatly prejudiced because if the jury had heard evidence of [the victim's] medical conditions, and how intoxicated she was at the time of the

incident there exists a reasonable probability the proceeding would have terminated differently." Camps' Brief at 7. We cannot agree.

Ms. Chadha's report makes no conclusive findings regarding the victim's ability to identify Camps as her attacker. As such her testimony would not have been admissible. **See**, **e.g.**, **Commonwealth v. Gonzalez**, 109 A.3d 711, 728 (Pa. Super. 2015) (explaining that expert opinion testimony based on mere possibilities is not competent evidence; expert testimony cannot be based solely on conjecture or surmise). The report merely states that it is unclear whether the victim's judgment was impaired when she identified Camps as her assailant.

Moreover, given the uncertainties in Ms. Chadha's assessment, the PCRA court did not err in denying Camps' petition without first holding an evidentiary hearing. **See Commonwealth v. Clark**, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer, a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

Finally, trial counsel extensively cross-examined the victim and impeached her credibility. **See** N.T., 6/1/16, at 60-78. "Trial counsel need not introduce expert testimony on his client's behalf if he is able to effectively cross-examine prosecution witnesses and elicit helpful testimony." **Commonwealth v. Copenhefer**, 719 A.2d 242. 25 (Pa. 1998). Camps fails to explain how Ms. Chadha's testimony could have added any value.

In sum, our review of the record provides ample evidence to support the PCRA court's conclusion that Camps failed to meet his burden of establishing trial counsel's ineffectiveness. We therefore affirm the PCRA court's order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2022