J-S06029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
           :        PENNSYLVANIA
           :
        v.             :
           :
           :
DARRYL ROACH           :
           :
      Appellant      :   No. 233 WDA 2024

Appeal from the PCRA Order Entered January 22, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006662-2021

BEFORE:   PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:          **FILED: May 7, 2025**

Darryl Roach ("Roach") appeals from the order denying his first, timely petition for relief under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The Commonwealth charged Roach with simple assault, terroristic threats,[2] and related offenses.  On March 2, 2022, Roach appeared for a guilty plea hearing with his attorney, assistant public defender Seth Barkley, Esquire ("Plea Counsel").  Roach stipulated to the following factual allegations set forth in the affidavit of probable cause accompanying the criminal information.  At approximately 5:30 p.m. on July 30, 2021, Roach entered Moe's Southwest Grill restaurant ("Moe's") and asked a seventeen year old employee if he could use the bathroom.  The employee, S.G., denied his request pursuant to store

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] *See* 18 Pa.C.S.A. §§ 2701(a)(3), 2706(a)(1).

policy. Roach, who appeared to be intoxicated, became "upset," "grabbed [a] plastic bag holder and threw it" at S.G., striking her in the hand. Affidavit of Probable Cause, 7/30/21, at 2. S.G. ran away, and Roach "attempted to go behind the counter with a pocket knife in his hand." *Id*. Meanwhile, someone alerted a Pittsburgh Police Officer, who was nearby on foot patrol. The officer entered Moe's through a different entrance and immediately apprehended Roach. Roach subsequently admitted to another police officer that he was under the influence of alcohol.

Roach entered a negotiated open guilty plea to terroristic threats and simple assault, in exchange for the Commonwealth's withdrawal of the remaining charges — a second count of simple assault, as well as disorderly conduct and public drunkenness. The Commonwealth stated on the record that there was no agreement as to sentence. Roach completed a written and an oral plea colloquy, in which he acknowledged the potential maximum sentences for each offense. Roach also agreed that he: fully read, understood, and truthfully answered every question; Plea Counsel was available to assist him with the written colloquy; no one promised him anything in exchange for his guilty plea, or forced, threatened, or coerced him into pleading; and Roach was pleading guilty because he was guilty. *See* N.T., 3/2/22, at 4-6.

This matter then proceeded immediately to sentencing. Plea Counsel argued Roach suffered from addiction and mental health issues, and he was already imprisoned three months for these charges, before his release to an

inpatient facility. Plea Counsel requested a sentence of probation or electronic monitoring. The trial court imposed the following sentences: (1) nine to eight months' imprisonment for simple assault — which was at the bottom of the mitigated guideline range; and (2) five years' probation for simple assault. The court also stated Roach had "permission to go to alternative housing with work release." *Id*. at 11.

Roach filed a timely post-sentence motion, seeking to withdraw his plea, which the trial court denied. Roach did not file a direct appeal.

However, on March 31, 2022, Roach filed a timely *pro se* PCRA petition. The PCRA court appointed present counsel, who filed the underlying amended PCRA petition. Roach claimed the ineffective assistance of both Attorney Barkley and assistant public defender Nicholas Weltz, Esquire ("P.H. Counsel"), who represented him at his preliminary hearing, for failing to request surveillance video from Moe's. Roach further averred Plea Counsel was ineffective for incorrectly advising that if he pleaded guilty, he would receive house arrest or alternative housing — and not imprisonment — but Roach was "ineligible for those alternatives [due to] a prior conviction." Counsel's Amended PCRA petition, 2/13/23, at unnumbered 6.

The PCRA court conducted an evidentiary hearing. First, Roach testified to the following. He raised the issue of the surveillance video with Plea Counsel, who told him "there was no videotape" and Roach could not go to trial because he "had no chance of winning." N.T., 11/27/23, at 9. Instead,

- 3 -

Plea Counsel "promised" that he could get "either alternative housing or house arrest" if he accepted a plea. *Id*. at 10. Roach accepted the plea because of that representation, and he felt that he was "being pushed into a corner." *Id*. However, Roach did not receive house arrest or alternative housing because his prior "conviction of homicide" rendered him ineligible. *Id*. at 11.

On cross-examination, the Commonwealth confronted Roach with his signed written plea colloquy form and the oral colloquy executed at his plea hearing. Roach agreed that he signed the form but reiterated that he "felt like [he] was being forced" because Plea Counsel told him he "had no chance of winning at trial." *Id*. at 13. Roach also stated that he did not "get a chance to read all of" the form and that he misunderstood the form. *Id*. at 13, 16. Roach denied he was guilty of the offenses, but he did not explain this to the trial court because Plea Counsel told him what to say. *See id*. at 14.

Next, Roach called Plea Counsel, who testified to the following. Roach did ask to view video of the incident. Plea Counsel recalled asking the Commonwealth about it on the day of the plea hearing, but the prosecutor responded they did not have a copy of it. Plea Counsel advised Roach that he could seek a postponement to try and obtain the video, but it would likely "be very difficult to acquire . . . business surveillance footage that goes back that far because [businesses often] tape over it on a rolling basis." N.T., 11/27/23, at 30. Having the surveillance video would have "put [the defense] in a much better position to know the outcome at trial," but Plea Counsel could not say

whether the video would have been useful because he had not seen it. *Id*. at 30-31. Additionally, the Commonwealth "had multiple witnesses" ready for trial and Plea Counsel's "strategy was a plea at the first opportunity" to have the "best chance at a" non-imprisonment sentence. *Id*. at 25. Finally, Plea Counsel did not promise Roach any particular sentence if he accepted a plea, and he did not recall Roach having any issues completing the plea colloquy. *See id*. at 33.

Finally, P.H. Counsel, who represented Roach at the plea hearing, testified that he cross-examined the juvenile employee on whether Moe's had video surveillance cameras. She replied that her store manager would have access to the footage. However, P.H. Counsel did not seek to obtain a copy of the video or have the manager preserve that footage.

The PCRA court denied relief and Roach filed a timely notice of appeal.[3] Roach presents one issue for our review:

> Whether the [PCRA[ court erred in denying . . . Roach's amended
> PCRA petition wherein . . . Roach received ineffective assistance
> of counsel during the pretrial and trial stages of his case which
> rendered his plea unknowing and/or involuntary?

Roach's Brief at 4 (unnecessary capitalization omitted). Roach avers the PCRA court erred in denying his petition, where: (1) both his prior attorneys were ineffective for not obtaining a surveillance video; and (2) Plea Counsel gave

---

[3] The PCRA court did not order Roach to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

"faulty advice . . . that he would be eligible for alternative housing and house arrest," when he was in fact ineligible for alternative housing. *Id*. at 15.

We first note the applicable standard of review:

Our standard of review of an order dismissing a PCRA petition is limited to "the PCRA court's findings to see if they are supported by the record and free from legal error." We are limited to the PCRA court's findings, and the evidence adduced at the hearing, viewed in a light most favorable to the prevailing party at the PCRA level. The PCRA court's witness credibility findings are binding on this Court, so long as the record supports those findings. A PCRA court's legal conclusions, however, are reviewed *de novo*.

*Commonwealth v. Ortiz-Pagan*, 322 A.3d 247, 251 (Pa. Super. 2024) (citations omitted).

With respect to a claim of counsel's ineffective assistance, we consider:

Counsel is presumed effective, and the appellant bears the burden of proving otherwise. To overcome this presumption, the appellant must demonstrate that: "(1) the underlying claim is of arguable merit; (2) [] counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." As to the second prong, we will conclude "that counsel's chosen strategy lacked a reasonable basis only if [the a]ppellant proves that 'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" Further, if a claim fails under any part of the ineffectiveness test, we may proceed directly to the unsatisfied element and dismiss the claim on that basis alone.

*Id*. at 252 (citations omitted).

This Court has stated:

"[A] criminal defendant's right to effective counsel extends to the plea process[.]" Under the PCRA, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will

- 6 -

serve as a basis for relief only if the ineffectiveness caused [the petitioner] to enter an involuntary or unknowing plea." "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."

"[T]o establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." This is not a stringent requirement. The reasonable probability test refers to "a probability sufficient to undermine confidence in the outcome."

*Commonwealth v. Brown*, 235 A.3d 387, 391 (Pa. Super. 2020) (citations omitted). Additionally, "[a] defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citation omitted).

On appeal, Roach intertwines his two ineffectiveness claims. First, he avers both his prior attorneys "were ineffective for failing to properly investigate his case for surveillance video which he believes would have aided his case." Roach's Brief at 24. He contends: (1) at the preliminary hearing, S.G. testified that "surveillance video existed and would have been in the control of the store manager;" and (2) at the PCRA hearing, Plea Counsel "asserted that without the missing evidence there was 'no way' they could win the case." *Id*. at 24-26. Roach maintains this failure, coupled with Plea Counsel's promise that he could receive a non-incarceration sentence, "made

[him] feel as though he was 'backed into a corner' and . . . 'had no choice' but to" plead guilty. *Id*. at 25. However, Roach claims, he "had a prior homicide conviction . . . rendering him ineligible for alternative housing."[4] *Id*. at 31. Thus, Roach avers, Plea Counsel was ineffective for giving mistaken advice concerning his potential sentence. Finally, Roach asserts both prior counsel had no reasonable strategic basis for not obtaining the surveillance video, and had they done so, it was reasonably probable that he would have gone to trial.

In its opinion, the PCRA court cited Roach's plea colloquy, which "unequivocally established that [Roach] was pleading guilty because [he] was guilty and that no promises were made." Trial Court Opinion, 6/27/24, at unnumbered 1. The court also cited Plea Counsel's testimony that: (1) he did not recall Roach having any issues completing the plea colloquy, nor asking any questions about it; and (2) Plea Counsel did not promise Roach would receive any specific sentence if he pleaded guilty.

After review, we determine the record supports the PCRA court's findings. *See Ortiz-Pagan*, 322 A.3d at 251. While Roach testified at the PCRA hearing that he did not recall, understand, nor completely read the plea colloquy, the PCRA court was free to discredit this testimony, and it properly relied on Roach's responses in his plea colloquies. We reiterate that Roach acknowledged that: he read and understood the colloquy; Plea Counsel was

---

[4] Roach states, however, that his prior conviction "did not affect his house arrest eligibility." Roach's Brief at 31.

available to answer any questions; and no one forced or threatened him to plead, and no one promised him anything. The Commonwealth clearly stated they had no agreement as to sentence, and the trial court advised Roach of the maximum potential sentences for each offense. Roach cannot now disavow those statements from the plea hearing. *See Brown*, 48 A.3d at 1278. Similarly, the PCRA court was free to credit Plea Counsel's testimony that he did not promise Roach he would receive house arrest.[5] *See id*. For the foregoing reasons, we conclude Roach has failed to show his underlying issue has merit. *See id*.

With respect to Roach's claim that both prior counsel failed to obtain surveillance video from Moe's, we emphasize that he presented no explanation, both before the PCRA court and on appeal, of what the video would have shown. On appeal, he states vaguely that "he believes [the video] would have aided his case," and that "[w]ithout any video surveillance evidence to corroborate *his version of the events*[, he] would have been left to testify on his own behalf" had he proceeded to trial. Roach's Brief at 24, 39-40 (emphasis added). Saliently, however, Roach failed to offer any

---

[5] Additionally, we reiterate that at sentencing, the trial court ruled that Roach had "permission to go to alternative housing with work release." N.T., 3/2/22, at 11. At the PCRA hearing, Roach did not present any evidence to support his one-sentence testimony that: (1) he had a prior homicide conviction; which (2) precluded him alternative housing. *See* N.T., 11/27/23, at 11.

- 9 -

version of events contradicting the factual allegations of his criminal complaint.

Roach also failed to present any evidence: (1) that the police or prosecution ever possessed the video; or (2) the evidence was still available. While Roach relies on S.G.'s preliminary hearing testimony that surveillance footage existed, our review of the transcript reveals her equivocation. S.G. testified as follows on cross-examination by P.H. Counsel:

> [P.H. Counsel:] And in your time working there, do you know if the Moe's store has surveillance footage?
>
> [S.G.:] We do, I believe.
>
> Q. Okay. Does your manager have access to that footage?
>
> A. I believe so.

N.T., 9/2/21, at 11.

In light of all the foregoing, we conclude that Roach failed to establish prejudice on this issue. *See Ortiz-Pagan*, 322 A.3d at 251; *see also Commonwealth v. Clark*, 961 A.2d 80, 93–94 (Pa. 2008) (denying relief on claim "that trial counsel was ineffective for failing to secure and present surveillance videotapes from the deli on the night of the murder," where petitioner failed to "adequately plead that such tapes even existed, let alone that they contained evidence favorable to his case").

Having concluded no relief is due on Roach's claims, we affirm the order of the PCRA court denying his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/07/2025